The Honorable Court, all rise. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Please be seated. Let's go on the record. Yes, Judge. We're on the record? Yes, Judge. Okay, and before we all proceed, I just want to welcome our newest colleague, Judge Seth Aframe from New Hampshire. This is his first sitting. We're very happy to have him here, and I'm introducing him to the public and all attorneys. You'll be seeing a lot of him over the next many years to come. And I'll say this, and this is just one public occasion, that I just want to thank all of my colleagues that are here, and really everyone on the Court for making such a warm welcome to me. I have spent many years at that podium looking this way. This is my first time looking that way, so I will do my very best. Okay, so let's call in the first case. Welcome. Thank you, Judge. Today's case, as we recall, was previously announced and the time is allotted to counsel. First case today is number 23-1767, Jaden Brown v. Sam Dickey, et al. At this time, will counsel for the appellants please introduce himself on the record to begin. Thank you. May it please the Court, my name is John Wall, and I represent the appellants in this case, Sam Dickey and Dan Haskell. Your Honor, I'd like to reserve two minutes for rebuttal. You may, and you may begin. Thank you, Your Honor. Jaden Brown asserted claims pursuant to Section 1983 based on constitutional violations against my clients, along with some coordinate claims under the main Constitution. My clients moved for summary judgment on the basis of qualified immunity with regard to all of those claims. The district court in pertinent part denied them summary judgment on that basis, and my clients are appealing from that order. Based on the procedural posture, I'll first address the jurisdictional issue and then proceed to the merits of the argument. And we're not going to interrupt you. Judge Afram gets the first question, so after he's done, then Judge Montecarlo and I will follow. Very good, Your Honor. It is fairly clear at this point, based on Supreme Court decisions like Barron's and Plumhoff, that denial of summary judgment on a qualified immunity issue is immediately appealable to resolve a dispute concerning an issue of law, an abstract issue of law, as the Court referred to it in Barron's, relating to that qualified immunity. It's our reading of decisions from both the Supreme Court and other circuits that those legal errors can include errors based upon the application of the summary judgment standard. Let me ask about that then. So as I understood, at least our case law, there's no jurisdiction if there's an issue of fact or the district court perceived an issue of fact. So that perceived issue of fact suggests to me we're not just here asking did the district court get it right, because even if I happen to think they got that wrong, if the ruling from the lower court is that's how they perceived it, as I understand our case, is that deprives us of the jurisdiction. Do you agree with that? I agree that the First Circuit law strongly indicates that that is the standard under which the jurisdiction is going to be measured. Our argument is that in Supreme Court cases and cases from other jurisdictions, there are instances where the legal error can be the application of the summary judgment standard, so therefore simply the determination by the court that it believes there to be a material issue of fact isn't sufficient in and of itself. Right. So Scott's an example, right, from the Supreme Court, right? Scott, yes. As I understand, Scott, you have plaintiff say things happened in a certain way, and there's a video that indisputably shows it's the opposite of what plaintiff said. So you have a record that indisputably points one direction. And so it seems to me to have jurisdiction, you would need to have a situation like that, right, where the record indisputably points in one direction. Correct. And you think that's what we have here? And I believe that's what we have here. And so tell me why. Because the only evidence with regard to observation of the plaintiff's naked body, which is the basis of her claim, is the testimony of the officers where they denied having ever visualized her naked body at any time during this process. Okay. But you know that there's two kinds of evidence, right? There's direct evidence and there's circumstantial evidence. Yes, Your Honor. And they count equally, right? Yes, Your Honor. And there's a lot of circumstantial evidence in this case that's not consistent with what your clients testified to. Well, we would contend, Your Honor, that there is a lot of evidence in this case, which we are, for the purposes of appeal, willing to concede indicates that it was possible our clients were in a situation where they could have observed her naked body. So let me run through a couple facts with you. So Officer Dickey, at least the facts would support, he's in the hospital room when the plaintiff is giving birth. He's on a couch within four feet of the plaintiff. Her legs are being held in the air while she's giving birth. He's keeping notes in a journal saying she's pushing babies here. And you're saying because the plaintiff can't say, I know he saw me, the jury couldn't infer from all of that that he probably did see her? Well, it's not just that the plaintiff didn't provide that kind of evidence. There is no other evidence as to whether they observed her. But all those things I just said, can't a jury hear all of those things and say, well, of course he saw her, because all those things happened? It's our contention, Your Honor, that that would be speculative. And that's the legal error that we believe that the plaintiff supported. If you can translate that to summary judgment, doesn't Judge Aframe's question pose or create a genuine issue of material fact that would surpass at least summary judgment? Because one thing is summary judgment, that context, because a reasonable juror could perhaps, using circumstantial evidence at trial, conclude that, yes, four feet away, taking notes, you know, it's a preponderant standard, versus, you know, there will be testimony. But, again, we're dealing with a summary judgment standard. We're not at trial. That's correct, Your Honor. And it's our argument that the summary judgment standard, the parties cannot rely upon speculation for either direct evidence or in terms of circumstantial evidence. So you're arguing that the inferences the district court made here were improper? Speculative, correct. And they have to be so bad that they meet the Scott standard, because the First Circuit laws, if the district court perceived an issue of fact, that's enough unless we are so far down the road that we're meeting Scott. And we believe that's what the record shows in this case. And you think we've met Scott. So that's the genesis of your jurisdiction argument. That is the genesis of our argument. And in this case, we believe it's an error that's compounded because under the Cookish standard, you have to establish not only that they observed the plaintiff, but also that the observations were more than inadvertent, temporary, those type of things. Before we get to that, let me just ask you sort of a different question. Do you have any argument if, say, we accept Brown's version of the facts here is true, in other words, that the defendants did see her naked body, do you still win as to the legal question presented on jurisdiction or no? Well, that is a hard argument, Your Honor, because then you're really relying upon the idea that you've got an additional level of speculation in terms of what the nature of that observation was and that there is no evidence to establish, even if they could establish, infer from the record materials that they were in a position to see or might have seen her, that that observation was more than just temporary or inadvertent, that type of standard. So we believe there's an additional level of speculative inference that would allow us to invoke the court's jurisdiction to review this. Can I ask a question just so I understand your argument? So argument one, as I understood it, was assume I just accept everything you said. They didn't see her naked. Therefore, the question is, is it clearly established that being in a hospital room where someone's giving birth and you don't see them naked, does that clearly establish Fourth Amendment issue? That's one of your arguments, correct? Correct. So my question is, the part I was less clear, is are you arguing that if we accept for purposes of this interlocutory appeal that your clients did see her naked, are you arguing that's still not a search because they did not touch her, they did not make her take her clothes off, and they were not there to investigate a criminal act? Is that one of your arguments? That is still one of our arguments. We made that argument before the district court, and we repeated that argument before this court. And so that one, you're assuming for purposes of that argument that they did see her naked? That you could assume from the record materials that the judge identified that an inference could be drawn. We believe that with speculation. I'm not here to concede that. I'm just saying for that part of the appeal, are you assuming the facts in light most favorable to the plaintiff? Yes. Okay. I know your time is up, but if you could address briefly, and you're going to have some rebuttal time, the clearly established right, isn't this an instance if, again, the facts, as the plaintiffs say, isn't this something that is so obvious, so egregious, that even though there's not a case on point, it's a sort of type of case that qualified immunity would not apply? We don't think so, Your Honor. And frankly, Cookish, I think, is the best reason why that's the case because this Court, in Cookish, was unwilling to say that just simply being present in a situation where somebody could be viewed naked was sufficient to constitute the court. Assume, for the purpose of the question, not only present when somebody is naked, but assume all the other circumstantial evidence surpasses, goes beyond summary judgment and is going to trial, would that still be, again, you're just assuming for the purpose of the question, that all that circumstantial evidence, the jury were to believe it or it would surpass the summary judgment, would that entitle you still to qualified immunity, that they were actually looking at her and doing whatever is alleged? We believe so, Your Honor. Obviously, the nature of the correctional facilities is that inmates and corrections officers are going to be thrown together. Corrections officers are going to be required to give testimony. But there is a regulation here, at least it has to be female officers, not male officers. That's, you know, there's also a violation of the state policy. Which, of course, is not the constitutional standard for the purposes of the first prompt for the clearly established right concept, and that's why we're focusing more on the constitutional standard referenced to Cookish. Okay. Thank you. Thank you. Let's hear then from Counsel Dean for the appellee. Please introduce yourself on the record to begin. Thank you. Good morning, Your Honors. I'm Jeremy Dean, and I'm here representing Jaden Brown, the plaintiff appellee in this case. And I'm happy to take questions. Why don't you start where Counsel ended about the clearly established right and answer that, and then maybe go backwards. Okay. So I think that on the clearly established point, I believe that there's the question that we have here that the court has before it is one of the level of specificity versus generality. So the appellants are looking for the very most specific reading of the qualified immunity case law. So they're looking for we need a case precisely on point with factual, identical factual facts. I think there's things in between that and a very, very general or broad reading of those cases. But in essence, I think here we have a sort of identical. This case is identical categorically to other cases of this type. So it's of the same nature. So what you're saying is you kind of look at the general nature of the right that's been established, because no two cases are ever going to be alike. No. And I think this is a- And is the right cookish? I mean, is that the right we're talking about? The right not to be seen naked in a way that's not inadvertent, casual, or restricted? Correct. Is that the right? Yes, that would be the right that I would argue for. Is there any other controlling authority that you would point us to aside from cookish? Yes. So may I just address cookish first, and I'll get to those? So cookish, I think, is that case, yes, specifically deals with a search. So there's a lot of search for a specific language in that case. But I don't think the holding is limited to that. The principles outlined in the survey of law in that case is much broader than that, and it refers to far less specific types of things. So when you're looking at the scope and manner of this intrusion, which cookish talks about a lot, there is, as I say, it's not inadvertent. It's not occasional, casual, restricted. This took place over a long period of time and was very dedicated. And cookish also talks about inmates going to the bathroom and changing clothes that extended views of those people. People doing that in prisons would be a violation of their Fourth Amendment rights. So we have that here. This is a private, intimate bodily function, if you will, although I think it's something more than that, that is happening now with guards sitting within arm's distance of the person, of my client, going through this moment. So there is a case. And I take it that this is not a bodily function that's a day-to-day bodily function. It's probably every nine months and probably not every inmate. It's a very reduced number of inmates who are probably pregnant. That's true. And I think that the numbers of people who would be subjected to this kind of treatment are probably very small. I know that I had to have done a survey. Wouldn't that small number somehow benefit to the appellant's favor because it's not an issue that happens way too frequently? I actually think it's the opposite. And that's because it's so easy to address. State law has already addressed this issue in Maine. Guards had policy that they supposedly were trained in that addressed this issue in Maine. And how easy would it be for them to have just sat outside the door in the hallway or to sat even by the door, sit by the door where they would have been 15, 20 feet away based on the photograph that's in the record and in the court below's opinion. They sat at the closest possible place that they could be. The only way they could have been closer would be to get in bed with them. And let me say this. At a minimum, you would still have genuine issues with genuine fact and at least go to trial. Of course. The record is replete with genuine issues of material fact. And I think I outlined those in my brief a lot. I could throw off case sites. Not necessary. Mr. Wall indicated that there is an argument that assumes that his clients saw your client naked, which is that there was no search. So what is your response? Because that, I think, if that's correct, what he said, we would have jurisdiction over that part of the case. And what's your response to there was no search? So, again, I addressed that in my brief, and I think I addressed that fairly squarely. But the issue with the search is that that's taking, again, a very narrow definition of what a search is. So based on the argument that they would have to have seen naked genitalia, then it wouldn't be a search to wiretap somebody. So that doesn't make sense to me. It doesn't work. The fact that this is a custodial setting versus another setting where somebody may be naked or they may, does that benefit to you? Well, I think the fact that they were outside of the jail in the hospital. But still it's a custodial setting in that they're accompanying that person. It is. I suppose you could argue that that follows. But then I would ask, why are they there? They're there to observe the person. They're there to make sure that they don't commit a crime, hurt somebody, or escape, right? So those are both crimes when you're in jail. So they're there to search. They're there for a search. They're there to observe what she does. That's a search. You were telling me, I think, that there was other authority in addition to Cookish. And I'm assuming also you're relying on the policy, the main policy statement. Yes, Your Honor. So I think just recently, just in fact a couple of weeks ago, in Burr v. School Committee of Coloster. May I finish? No, you still have five minutes. Oh, that's the five-minute line. Thank you. So this court used a much broader standard. And that was a First Amendment case, so a lot of the things don't come over to this case. But on page 23 of that opinion, the court said a directly on-point case is not required and a right is clearly established, this is page 22, when it's no longer among the hazy area of constitutional issues that might be reasonably misapprehended. I don't believe that this is a hazy area. I think that there were obvious choices that would have taken this case out of being a violation of the Fourth Amendment. Other cases, though, Sepulveda, that is one in the Ninth Circuit, Sepulveda v. Ramirez. It's 967 F2D 1413. And at 1416 is the Penn site, denying qualified immunity, it denies qualified immunity to a parole officer who observed a female, a parolee, and they applied this standard. They said it's at least as high a bar as someone in prison would receive. So they used the inmate standard. She was urinating into a drug test cup within a bathroom stall. And so they held the right to bodily privacy as fundamental. In that case, there was no evidence that mentioned by the Ninth Circuit that the parole officer actually saw anything. He just stood inside the door with the door open to the stall while she used the bathroom. So a similar level of proximity. He could make a similar argument that he didn't see anything, and yet that was still a violation of privacy because he was present, observing with his eyes, ears, nose, everything else, a very intimate, private moment. Let me ask you this. Arguably, your arguments against Haskell are weaker than the claims against Dickey because Haskell wasn't present in the room during that specific moment when your client gave birth. What evidence would support that Haskell's observation of Brown's naked body were not inadvertent, were not merely inadvertent, occasional, casual, et cetera? Right. So there were multiple issues with things about Haskell. He was there for about an hour earlier in the day or evening, I think it was, during the officer who was on duty previously during her dinner break. And so he was there during that time. He also came back to deliver the two remaining officers. And he had another officer with him during the lunch break, meal break. So he didn't need to be there. So he chose to be there. His conduct in the room was simply outrageous. You know, he talked about whether an inmate who had accused him of having sex with her, we know which would be a felony and a federal crime as well. And, you know, he denied this. He discussed my client's mother, talked to her about all sorts of things. He made jokes about how there were one and a half inmates that she should name her child after the jail. So his behavior was egregious. But my client also notes that he specifically stood up behind the, and I believe this is in the deposition testimony, but it's certainly in her declaration for the summary judgment. And he was standing up behind the doctors or nurses while they were performing, you know, inserting their fingers into her vagina to check her dilation. And he could see over their shoulders and see her. So apart from the sort of her answers, these equivocal answers to leading questions that the appellants rely on, in fact, she has asserted that he was watching her and that he saw her during these moments, these intimate exposed moments. And it's simply not believable that someone in that position didn't see anything. And just to focus on, we're supposed to be deciding. Judge Torrenson concluded those are all disputed facts. They may be weaker. They may be stronger. What does it, does it, I mean, has that really ended from your perspective? I mean, is that because? I would rather this case be decided in my client's favor on the merits than have a jurisdiction, rejected on jurisdiction, of course, because I don't want to have to come and do this appeal after we win a trial. But nevertheless, it is our jurisdiction. I agree. So I made that argument because when I looked at the standard that was set forth by appellants, I thought this is an argument that can be made. I have to make it. It's in our favor, the jurisdiction argument. But I think that there are genuine issues of material facts. There are genuine issues certainly on, you know, throughout that would, that are material to the qualified immunity test. I have one last question, something that I couldn't really follow. There were sort of stray references to the Eighth Amendment and Fourteenth Amendment claims, but I really found no sustained argument from anybody about those claims that I could make sense of what you were telling me. Does it differ from the Fourth Amendment claim in some way or not? I think it would because those were pleaded by my clients. So I didn't actually draft the complaint. It was an attorney prior to me who drafted the complaint. And also on the motion to dismiss stage, I was not the lawyer at that stage. But those issues were pleaded and debated at motion to dismiss. They survived, and the court has, Judge Torreson has noted that those survived at each stage. In your view, has neither party really made, what's been presented to us here is a Fourth Amendment claim. That's the thrust of the arguments that I was reading in the briefs. I mean, there's nothing for us to say on the Eighth and Fourteenth Amendment claims at this point? Well, that was the, the summary judgment was requested on the Fourth Amendment grounds, not on Eighth Amendment grounds. And it was denied on those grounds, and the appeal does not mention the Eighth Amendment. I thought it didn't. Maybe I'm wrong about that. The Eighth Amendment to me is different, and the reason why is simply because you have a right to be free from cruel and unusual punishment. And I can't think of anything much more cruel and unusual than having people who you know to be sexual abusers. And I think it matters that Haskell did not deny the fact that my client saw other people stripping for him in the jail, sit in a room at close proximity watching you in labor for hours and give birth. Okay. Thank you, counsel. Thank you, Your Honor. Mr. Wall, you have two minutes for rebuttal. Mr. Wall, can we follow up on the Eighth and the Fourteenth Amendment claims? Yes. I didn't see much in your opening brief on either of those. I think you made mention of them maybe in a footnote. We did note them in terms of obviously the focus both in terms of the motion to dismiss and the motion for summary judgment in this case was the Fourth Amendment standard. For obvious reasons, that's the amendment that Cookish relies upon. It would be our argument that it's not really been developed in terms of either an Eighth or a Fourteenth Amendment issue and certainly wouldn't constitute clearly established law for the purposes of an officer in this jurisdiction because For the Eighth and Fourteenth Amendment. Separate that from the Fourth. Correct, Your Honor. And in any event, from what we've been able to see from the couple of cases that are referred to the Eighth Amendment and the Fourteenth Amendment, the standard doesn't appear to be much different from the Fourth in terms of a requirement either of a search or of a direct observation of the My reaction to that briefing was none of that was particularly preserved well enough for us to decide. Do you disagree with that? I don't disagree with that. That was the point I was trying to get at. Beyond that, the only thing I would mention is with regard to Officer Haskell, we did make the point that we don't believe that there was any basis for denial of summary judgment for that officer because there was no evidence placing him in the room at the time that these events occurred while she was actually giving birth. But does that really matter if the question is whether he saw her naked during the I can't even remember, 12 or 15 hours she was there. And that's sort of where I was getting to was it's clearly the crux of a lot of their argument is the circumstances of the actual birth were the legs in the air and things like that. There's no evidence that he was there for that portion of it. I agree that it's the same speculative assumption. I didn't say speculative. Speculative assumption that the court was making with regard to Officer Haskell earlier in the evening. The only other thing I would say is my attorney dean referred to him standing behind the doctors while there's a digital exam or something of that nature. I don't recall that in the record, but certainly. No, the record is the record and we can look at it. Correct. I was just going to say that certainly if that were in there, I think the district court would have mentioned it in terms of the summary of the facts. Okay. Thank you very much both. I assume you're all going to Maine back, so safe travel or safe drive. Thank you, counsel. That concludes argument in this case.